CYNTHIA HAMPTON, Respondent, v. PULLMAN PALACE CAR COMPANY, Appellant.

Kansas City Court of Appeals, November 10, 1890.

1. **Evidence:** SLEEPING-CAR COMPANY: BAGGAGE: PASSENGER: SERVANT. It is the duty of the servants of a sleeping-car company to keep a reasonable watch over the hand baggage of its passengers, and to use reasonable diligence to prevent its loss by theft; and in an action for lost baggage it is proper to admit evidence as to where the conductor placed the baggage and what he said while so doing.

Hampton v. The Pullman Palace Car Co.

2.    ——— : ——— : ———: RES GESTÆ : PRINCIPAL AND AGENT. The principal constitutes the agent his representative, in the transaction of certain business; whatever, therefore, the agent does, in the lawful prosecution of that business, is the act of the principal. And where the acts of the agent will bind the principal, there his representations, declarations and admissions, respecting the subject-matter, will also bind him, if made at the same time, and constituting a part of the *res gestæ* ; and so the declarations, explanations and suggestions of the servants of a sleeping-car company, whose duty it is to care for the passengers' baggage, made upon the passenger's inquiry while on the car, as to what had become of his baggage placed away by such servant, is admissible in evidence in an action against the company to recover for the lost baggage.

3.    **Sleeping-Car Company:** LIABLE FOR WHAT AMOUNT OF BAGGAGE. The liability of a sleeping-car company should extend to, and be made to cover, such articles of baggage as are ordinarily or usually carried by travelers in like situations, in valises which they carry with them into such cars, provided they are such articles as would be considered baggage in an action against ordinary carriers of passengers.

4.    ——— : ———. The fact that the passenger may have a trunk with him or have placed in his valise articles he may not need while on the car, and only to be used in case of stopping over, does not militate against the right of recovery.

5.    **Pleading:** STATEMENT. The statement filed before the justice in this case is examined and *held* sufficient.

*Appeal from the Pettis Circuit Court.*—HON. J. H. BOTHWELL, Special Judge.

AFFIRMED.

Statement by the court.

This was an action commenced before a justice of the peace to recover the value of a certain valise and contents, alleged to have been lost by the plaintiff while traveling in one of the defendant's cars. The case was appealed to the circuit court, where a judgment was rendered for the plaintiff for the amount sued for less a small amount remitted after verdict. The statement filed by plaintiff is as follows: "That, on or about the

twenty-third day of October, 1888, the defendant Pull-
man Palace Car Company, a corporation under the laws
of the state of Illinois, and doing business throughout the
United States, was a carrier of passengers and their bag-
gage, by railway sleeping cars, from Denver, Colorado,
to Kansas City, Missouri, for hire ; that, on said day,
the Pullman Palace Car Company received into its car
'Montana,' the plaintiff, with her baggage, to-wit:

| | |
|---|---:|
| One leather valise ( of value )...........$ 5 00 |
| And contents, one black silk dress, value.. 50 00 |
| One gray plush bonnet, value........... 5 00 |
| Two night gowns, $1.25, of value........ 2 50 |
| One book of poems, of value............. 2 00 |
| Two table scarfs, of value.............. 1 50 |
| Three gauze vests, 50c..... ............ 1 50 |
| One skirt.... ....................... 1 50 |
| Two neckties, 75c........ ............ 1 50 |
| One pair of slippers........ .......... 1 00 |
| Three small neckties, 35c........ ..... 1 05 |
| One silk handkerchief..:.............. 1 00 |
| Four linen handkerchiefs,.............. 1 00 |
| One toboggan cap......... ........... 1 00 |
| One leather purse........ ........... 1 00 |
| One leather, satin-lined watch case ..... 2 00 |
| Four linen collars, 15c................. 60 |

" Total........................$79 15

" Seventy-nine dollars and fifteen cents to be carried
from said Denver, Colorado, to Kansas City, Missouri,
for the sum of $3.50, which was then and there paid
to defendant ; that the defendant did not use proper
care therein, but by the negligence and improper con-
duct of defendant's servants and employes said baggage
was wholly lost, and has not since been returned to the
plaintiff, though often demanded, whereby she is dam-
aged in the sum of seventy-nine and fifteen-hundredths
dollars, for which, with the costs of this action, plaintiff
prays judgment against defendant."

The plaintiff testifies, in substance, as follows: That, about the twenty-third or twenty-fourth of October, 1888, she reached Kansas City on her return from a visit in Montana to her home near Sedalia; that she left Helena, Montana, and changed cars at Butte and again at Green River; at the latter place she took the car "Montana," one of the sleeping cars of the defendant, and rode in it to Kansas City. When she left Helena she intended to make two visits to friends on the way before reaching home. In the first place she expected to stop at Denver, and then expected to go from Kansas City to St. Joseph, Missouri, and from there to return to her home, near Sedalia. When she left Helena she checked her trunk through to Kansas City, and carried with her on the cars a large valise and a hand-satchel. When she arrived at Green River and entered the car "Montana," she only secured a berth and a seat in that car to Denver, because she expected to stop off there; but failing to find her friend at the depot she came on in the same car to Kansas City. She further testified as to the contents of her valise, and the value thereof, as stated in the complaint. And, further, that she would have needed the dress and bonnet which were in the valise in making her visits in Denver and St. Joseph; that she had packed her baggage with reference to those visits, putting into her trunk such articles as she would not need while making those visits, in order that she might check it through to Kansas City and not be troubled with it; that such articles as she would need on her visit she put in her valise before leaving Helena; that she assorted her baggage so that she would not need to go to her trunk; that she would have needed all the articles in her valise had she made these visits, except the neckties mentioned, which she intended for presents at St. Joseph, and the table scarfs, which she had purchased after her trunk was packed.

*Jackson & Montgomery*, for appellant.

(1) The defendant was not a common carrier, nor liable as such. *Scaling v. Pullman Co.*, 24 Mo. App. 29; *Root v. Car Co.*, 28 Mo. App. 99. Therefore, the petition did not state any cause of action, and no evidence should have been admitted. For the same reason, the motion in arrest should have been sustained. The petition stated one cause of action, while the evidence was offered to prove a different one, and, for that reason, the evidence was improperly received. For the same reasons, the demurrer to the evidence should have been sustained. (2) The testimony of the plaintiff, detailing conversations with the conductor and porter, after the loss of her valise, was mere hearsay, and was improperly admitted. *Bevis v. Railroad*, 26 Mo. App. 21. (3) The defendant was not liable, even in a proper case, for anything except the value of such articles as were reasonably necessary for the comfort and convenience of the plaintiff on the journey from Denver to Kansas City; hence defendant's second instruction should have been given. *Diehl v. Woodruff*, 10 Cent. Law Jour. 66; *Blum v. Pullman Co.*, 3 Cent. Law Jour. 592; *Root v. Car Co.*, 28 Mo. App. 199–206; Thompson's Carriers of Passengers, p. 532.

*Franklin Houston*, for respondent.

(1) The complaint filed before the justice of the peace does not charge defendant as a common carrier. The words, "carrier of passengers and their baggage by railway sleeping cars," are merely descriptive, and may be rejected as surplusage. An entirely good and sufficient cause of action remains after omitting these words. *Coughlin v. Lyons*, 24 Mo. 533; *Lin v. Railroad*, 10 Mo. App. 132; *Mooney v. Williams*, 15 Mo. 443; *Metz v. Eddy*, 21 Mo. 14; *Gaty v. Sack*, 19 Mo. App. 474. (2) Even if plaintiff's statement had charged defendant as a common carrier, yet sufficiently apprised

defendant of the nature of the demand, and had estab-
lished a liability for negligence merely, it would still
not be fatal. The rule, that the *allegata* and *probata*
must correspond, does not hold in these justices' courts
as in suits commenced in the circuit court. *Lin v.
Railroad*, 10 Mo. App. 132; *Gaty v. Sack*, 19 Mo. App.
474. No variance between the allegation and the proof
is material, unless it has actually misled the adverse
party to his prejudice, in maintaining his defense on
the merits; and it neither alleged nor proved that it was
surprised or misled on the trial on appeal in the circuit
court. R. S. 1889, sec. 2096; *Lin v. Railroad*, 10 Mo.
App. 132; *Gaty v. Sack*, 19 Mo. App. 474; *Turner v.
Railroad*, 51 Mo. 501. (3) The conversations of plain-
tiff with the porter and conductor were a part of the
*res gestæ*, and were properly admitted in evidence.
These statements were made immediately on the dis-
covery of the loss, while in the discharge of their duty
in hunting for the valise, *et dum fervet opus*. They
were a part of the whole transaction, what was said, as
well as what was done, by them at the time, while the
matter was warm, and not a mere, cold, historical nar-
rative. Greenleaf's Ev. [12 Ed.] p. 122, sec. 108, *et seq.;*
*Beardslee v. Steinmesch*, 38 Mo. 168; *Association v.
Edwards*, 47 Mo. 448-9; s. c., 48 Mo. 42; *Bevis v.
Railroad*, 26 Mo. App. 22; Story on Agency [7 Ed.]
p. 149, secs. 134-5, ch. 6. These sections from Judge
STORY were evidently written in a prophetic mood, for
future use in this very case. He could not do it better
now as counsel for respondent. (4) Appellant's next
ditch is the assertion that there is no evidence of negli-
gence by defendant. It is easily bridged. When she
retired it was where the conductor in charge himself
put it, with the assurance that "it would be perfectly
safe there." In the morning it was gone, and neither
the conductor nor the porter could tell her what had
become of it. That is all. It is enough. Could it have
disappeared in this way if the conductor and porter had

watched with reasonable diligence, while she slept, the few exits from the car? That such a piece of baggage was so lost is abundant and conclusive evidence of negligence, and so the trial court and jury found. I again cite appellant's favorite cases : *Bevis v. Railroad*, 26 Mo. App. 23 ; *Root v. Car Co.*, 28 Mo. App. 205 ; *Scaling v. Car Co.*, 24 Mo. App. 33-4-5. (6) But back of appellant's deep ditch is a high wall. This is built across the entrance to the car, of materials brought from every part of the world. America, England and Australia have been ransacked ; and outside hangs this notice : " Only one suit of clothes allowed on trip from Paris to the Holy Land and return. Nothing but money to pay fare, a few ornaments and one night robe will be paid for if stolen." Respondent took nothing into the car beyond what was reasonably necessary while on the journey from Helena to Kansas City, including the stops at Denver and St. Joseph. *Scaling v. Car Co.*, 24 Mo. App. 33 ; *Root v. Car Co.*, 28 Mo. App. 206 ; Thompson on Car. Pass., p. 507-8.

ELLISON, J.—When the porter arranged plaintiff's berth at night, he placed her valise in the berth above the one she occupied, and she put her satchel in the berth with her. She had the porter get the valise down in order that she might get something out of it ; after which, as she was fastening it, the Pullman conductor came along and helped her ; when he had finished, she remarked she would have him return it to the upper berth. But the conductor said it would be perfectly safe in the unoccupied seat opposite her berth, at the same time placing it there. Defendant contends that this evidence should not have been admitted. But we think it was proper testimony. It was the duty of defendant's servants to keep a reasonable watch over the hand-baggage which she brought with her into the car, and to use reasonable diligence in preventing its loss by theft. *Bevis v. Railroad*, 26 Mo. App. 19. It is to be

assumed that plaintiff knew of this duty and expected its performance. It was a service which defendant had chosen these servants to perform, and it would be unreasonable to hold the passenger responsible for the manner or choice of modes of performance. She may well have supposed, and she had a right to infer, that these servants could care for it better in the place the conductor put it than in the berth above the one occupied by her. It is not unlike the conductor having said to her: "It is my duty to keep watch over this valise while you are asleep. I can perform that duty better by leaving it at this place, and I shall put it there."

II. When plaintiff arose next morning, a short time before reaching Kansas City, she noticed the valise was not where the conductor placed it. She went to the dressing room of the car, and, after making her toilet, returned, and still not seeing the valise, asked the porter and conductor about it. The porter began to hunt around for it, and answered that he had seen the valise early that morning. The conductor stated that he had moved it during the night—that he put it in the aisle by plaintiff's berth. He further advised her to go to the check stand at the Union Depot to see if it should be left there. She did so, but failed to find it. The defendant objected to all these statements of the conductor and porter, which took place next morning when she discovered her valise was gone, for the reason that they had no power or authority to bind the defendant by such statements; that such statements were hearsay, and that they were not made in the line of duty of such servants. The rule concerning the declarations of agents is nowhere better or more plainly stated than by Greenleaf's Evidence, volume 1, section 113, when he says that "The principal constitutes the agent his representative in the transaction of certain business; whatever, therefore, the agent does, in the lawful prosecution of that business is the act of the principal whom he represents.

And, where the acts of the agent will bind the principal, there his representations, declarations and admissions, respecting the subject-matter, will also bind him, if made at the same time, and constituting part of the *res gestæ*. * * * The party's own admission, whenever made, may be given in evidence against him ; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to the transaction then depending, *et dum · fervet opus.* . * * * Whenever what he did is admissible in evidence, there it is competent to prove what he said about the act while he was doing it ; and it follows, that, where his right to act in the particular matter in question has ceased, the principal can no longer be affected by his declarations, they being mere hearsay." Our opinion is, that under this statement of the law, the evidence objected to was properly received. In this case the defendant constituted the porter and conductor its agents to care for and watch over plaintiff's valise while she was asleep and during the time she was engaged in making her toilet next morning. The right and duty to represent defendant in this matter did not cease until the valise had been ( if it may be so expressed ) again put in plaintiff's charge. When plaintiff asked for her valise, it was the duty of these servants to show her where it was, or to account for it. This was certainly the most natural thing to expect in such a situation and under such circumstances ; and I think it was as lawful as it was natural. Their statements at this time were made before their duty, in regard to this affair or transaction, had ceased. They were made during the continuance of their representation of defendant in regard to this particular matter. It was a transaction yet " depending *et dum fervet opus*." Our position in this respect is not in conflict with *Bevis v. Railroad*, 26 Mo. App. 19, and is sustained by high authority. In *Morse v. Railroad*, 6 Gray, 450, statements of the conductor and station master, made next morning after

a trunk was lost, in accounting for the trunk, in answer to inquiries made in behalf of the plaintiff, were admitted in evidence. This case was affirmed in *Lane v. Railroad*, 112 Mass. 455, where the declaration of a freight agent, in answer to a demand for freight, that he "thought, perhaps, the Thompsons had got it," was admitted as being made during the continuance of the agency and in the course of duty as to that transaction. To the same effect is *Gott v. Dinsmore*, 111 Mass. 45. Our view of this matter is, furthermore, not in conflict with the rule as announced by Judge HENRY in *McDermott v. Railroad*, 74 Mo. 516, and in *Adams v. Railroad*, 74 Mo. 553. In the case first cited the judge recognizes the distinction between that case and the class to which the one at bar belongs. A comparison of those cases with this will reveal a clear difference in class.

III. Defendant further insists that, were a proper case otherwise made out, the recovery was permitted for more of the contents of the valise than is allowable under the law in such cases and asked the following instruction which was refused : " The court instructs the jury that as to the following articles included in the petition and valued at the following sums, viz.: One silk dress, valued at fifty dollars ; one bonnet, valued at five dollars ; two table scarfs, valued at $1.50 ; two gauze vests, valued at $1.50 ; one night gown, valued at $1.25 ; three neckties, valued at $1.05 ; one toboggan cap, valued at one dollar ; one leather purse, valued at one dollar ; one watch case, valued at two dollars ; total, $64.30. It is admitted by the plaintiff that they were not either necessary or convenient for her use while traveling upon the car of defendant and while making said journey, and would only have been used or needed by her if she had stopped at Denver City or St. Joseph, while visiting friends in these places, and for use during such visits, and that, as to all the aforesaid articles and the value thereof, your verdict and finding must be

for the defendant." The value of the articles of table scarfs, watch case and three neckties was voluntarily remitted from the judgment on the motion of plaintiff; such articles being for presents for friends, as stated by plaintiff. We will, therefore, not give to them any consideration. The plaintiff was asked, on cross-examination, to name the articles which were not necessary for her to have upon the trip from Denver to Kansas City; to which she answered, that the silk dress, value, fifty dollars; plush bonnet, value, five dollars; one night gown, $1.25; two table scarfs, $1.50; two gauze vests, one dollar; three small neckties, $1.05; one toboggan cap, one dollar; one leather purse, one dollar; one satin-lined watch case, two dollars; were not reasonably necessary to, or convenient for, her trip or to have on the train with her, and that she would not have had them on the train with her except for her contemplated visits; that she would not have needed them before she got home but for the visits, and, if she had not expected to make the visits, she would have put those articles in her trunk.

No question was made at the trial, or here, as to the articles in the valise being properly denominated baggage, that is to say, that, if the valise had been checked as baggage, the railway carrier would have been liable for its loss. But the point is made that she can only recover of a sleeping-car company for what was necessary or convenient for her use *while traveling upon the car and while making the journey*. If this point were allowed it would certainly restrict the liabilities of these companies to an exceedingly narrow limit. If a female passenger is only to be protected in the property which is necessary and convenient for her use while making the trip, her necessities, for all ordinary trips, would be restricted to the clothes, jewelry and necessary expense money, which she would have on her person when entering the car, with the addition of a sleeping robe. Nothing is, perhaps, better known

than that the traveling public carry with them valises containing articles of baggage, not merely necessary for use while on the car but for use after leaving the car. And so it is known and understood throughout the country that sleeping-car companies invite travelers into these cars with such baggage, receiving the passenger with it, as a part of his belongings. They say to him, in effect: Bring such baggage into our car and trust to us while you sleep. I am, therefore, satisfied that the liability of sleeping-car companies should extend to, and be made to cover, such articles of baggage as are ordinarily or usually carried by travelers, in like situation, in valises which they carry with them into the car under such invitation. If the articles in the valise would be considered baggage in an action against a carrier under the law as laid down in Thompson's Carriers of Passengers, 510 ; *Railroad v. Fraloff*, 100 U. S. 25, and in *Spooner v. Railroad*, 23 Mo. App. 403, I can see no reason why a sleeping-car company should not be held liable for the same baggage upon a loss occasioned by a failure to keep reasonable watch over and to use reasonable diligence to protect it. Applying this, as I think, reasonable, and just rule to the facts of this case, we find that the court properly refused the instruction.

IV. I am unwilling to allow anything against plaintiff's case on account of her having with her on her travels a trunk which she had checked with the railroad company, or that in preparing for the journey she placed some articles in the valise which she did not need while on the car and only expected to use in case she stopped a day or two at Denver ( an intermediate point ) to visit a friend.

V. The objection urged as to the complaint is not tenable. We think it states a cause of action. It sufficiently appears from it what the real complaint is, and while the allegation as to defendant being a carrier of passengers, if understood to state that it was a common

carrier, might have been omitted, the whole paper is amply sufficient, under our liberal dealings with proceedings before a justice of the peace.

It is not necessary to notice some other suggestions urged by counsel, as the foregoing is sufficient to express the view we take of the case. The judgment will, therefore, with the concurrence of the other judges, be affirmed.