Lowell Clyde OVERTON, a Minor, By Basil Overton, his father and Next Friend, Respondent,

v.

Richard TESSON, Appellant.

No. 48761.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion April 9, 1962.

Heneghan, Roberts & Cole and John J. Cole, St. Louis, for defendant-appellant.

Gray & Jeans, James W. Jeans, St. Louis, for plaintiff-respondent.

HOUSER, Commissioner.

This is a guest case arising out of an automobile accident which occurred in Illinois. Lowell Clyde Overton, a passenger, filed suit against Richard Tesson, owner of the automobile, for personal injuries, charging that due to the wilful and wanton misconduct of defendant in the manner in which he operated the vehicle it left the street and collided with objects off the traveled portion. Defendant denied generally, and pleaded several affirmative defenses, one of which was that plaintiff's injuries were directly caused by his own wilful and wanton misconduct and that under the circumstances plaintiff's actions exhibited a reckless disregard for his own safety, which contributed to cause his injuries. Plaintiff sued for $37,500. There was a verdict for defendant. The trial court sustained plaintiff's motion for new trial on the ground that the court erred in giving Instruction No. 6. Defendant appealed from the order sustaining the motion, and on appeal contends that the court did not so err and asks for the reinstatement of the verdict and judgment.

Defendant, plaintiff and another young man left plaintiff's house in the City of St. Louis in defendant's Chevrolet about 9:15 p. m. on the night in question. They drove to defendant's sister's house near Granite City, Illinois. After 15–30 minutes at the sister's house the three drove to plaintiff's brother's house in O'Fallon, Illinois. It had been raining. During the evening it started freezing and the rain turned to sleet and snow. After a couple of minutes at the brother's house the three went to Ray's Bar, two miles from O'Fallon, for 30 to 45 minutes, eating and playing pinball machines. According to plaintiff the three went from Ray's Bar to Slick's Lakeside Night Club at Eagle Park, Illinois, arriving about 11:30 p. m. or 12:00 midnight, and staying there 45 minutes or an hour. When they left Slick's Club they walked across the street to a parking lot and entered defendant's automobile. Plaintiff got in the back seat and fell asleep. Plaintiff testified, "I was passed out." The next thing he recalled was hearing defendant "hollering for someone to help him out of the car." Plaintiff had no knowledge of the manner in which defendant was operating the automobile at the time of and immediately prior to the occurrence, and knew nothing about defendant's driving from the time he got in the car at Slick's until after the accident happened. Defendant testified they started home directly from Ray's Bar and did not go to Slick's Club at all. There was a direct conflict with respect to the matter of drinking. Plaintiff testified all three had "a couple of beers" at defendant's sister's house; four or five draught beers each at Ray's; and that each had a bottle of beer and a shot of cognac and some setups with whiskey at Slick's; that plaintiff was feeling pretty sick and "couldn't think too good" and that as to defendant, "I guess you could say he was drunk." An objection was sustained "as to what he guesses." This appears in the transcript:

"Q. Then, I believe you [plaintiff] told the jury you thought Dick was intoxicated at Slick's, is that it? Did you actually think that?

"A. I knew it.

"Q. You knew it? A. Yes, sir.

"Q. Will you tell the jury why then you got in the car with him? A. It was the only way I knew how to get home.

"Q. Or why you didn't sit up and watch his driving?

"A. Because I couldn't keep my eyes open.

"Q. · Did you make any attempt to or did you just go in the back seat and pass out? A. Yes, sir.

"Q. Is that what you did? A. Yes, sir.

"Q. You didn't make any attempt to assist in the driving or looking out, or anything of that kind? Is that right?

"A. Yes, sir."

Defendant testified no one had anything intoxicating to drink at his sister's house; that none of them had anything to drink at Ray's Bar; denied that any of them had gone to Slick's Lakeside Club, and testified none of them had anything to drink in his presence or to his knowledge on the evening of the accident. Defendant's version of the accident: Defendant was driving his automobile down the center of one-way Ninth Street in East St. Louis, Illinois at about 20 to 25 m. p. h. The streets were glazed. The ice was in patches. The automobile hit an icy patch, swerved and slid sideways. The back end of his left front fender hooked the rear end of a car parked on the left-hand side of the street, causing defendant's car to strike the curb. Defendant had no control over the car after it hit the patch of ice. He had been driving the car normally and did nothing unusual in the operation of the automobile immediately before the skidding. After the accident the automobile's left front wheel was up on the sidewalk, and the bumper was up against an iron fence which it had partially pushed over.

Instruction No. 6 follows: "The Court instructs the jury that if you find and believe from the evidence that plaintiff participated about equally with defendant in the drinking of beer and whiskey on the occasion in question, and if you further find and believe that thereafter plaintiff voluntarily rode as a guest passenger in defendant's automobile and that he went to sleep in the back seat of said automobile at a time when he knew the nature and extent of drinking on the part of defendant and the icy condition of the streets as mentioned in evidence, if you so find, and if you further find that such conduct on the part of plaintiff exhibited a reckless disregard for his own safety, then you are instructed that plaintiff is not entitled to recover against defendant and your verdict shall be in favor of defendant Richard Tesson."

Ground No. 3 of plaintiff's motion for new trial (the basis for the action of the trial court) follows: "The Court erred in giving Instruction Number Six tendered by the defendant in that said instruction hypothesizes that the plaintiff and defendant participated equally in the drinking of beer and whiskey, and that the plaintiff knew the nature and extent of drinking on the part of the defendant, and that such conduct on his part exhibited 'a reckless disregard for his own safety.' This theory is completely at war with the defense theory tendered by the defendant, who testified that he had had nothing to drink during the course of the evening, nor had the plaintiff. The defendant can not rely upon testimony of an adverse party which is completely at war with his own theory for the submission of an exonerating verdict-directing instruction. The Instruction is further erroneous in that it is not a true contributorily wilful and wanton instruction, in that the jury has never been asked to find that the plaintiff was guilty of wilful and wanton misconduct. They are merely asked to find that such conduct 'exhibited a reckless disregard for his own safety.' The court had previously given a definition of wilful and wanton which far transcends the mere finding of a reckless disregard for one's safety, and in that regard, this instruction was in conflict with instruction number two."

On appeal defendant contends there was no error in giving Instruction No. 6, offered by defendant; that a defendant has the right to submit as many defenses as he has and therefore submission of plaintiff's reckless disregard for his own safety was proper even though portions of the instruction were based upon plaintiff's own testimony that both parties were drinking, which was inconsistent with defendant's testimony and evidence denying any drinking.

Plaintiff contends the court correctly ruled it error to give Instruction No. 6; that defendant's unequivocal testimony that neither had consumed any intoxicants is a judicial admission foreclosing him from submitting a defense based upon intoxication of both parties; that it is error to submit inconsistent defenses; that defendant cannot take advantage of plaintiff's testimony that is inconsistent with defendant's own testimony and theory of defense.

■ The trial court's ruling that Instruction No. 6 was erroneous because contrary to the theory of the defense was based upon two cases, Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24, and Picarella v. Great Atlantic & Pacific Tea Co., Mo.App., 316 S.W.2d 642, both of which were subsequently overruled in Tomlin v. Alford, Mo.Sup., 351 S.W.2d 705, a case decided during the pendency of this appeal. Under our ruling in Tomlin v. Alford it follows that defendant was entitled to submit each and every defense he had under the law; that an instruction authorizing a verdict for the defendant, based upon plaintiff's own wanton and wilful misconduct, founded upon facts and circumstances in evidence, is not erroneous because inconsistent with defendant's other defensive plea (that defendant was not guilty of wanton and wilful negligence in the operation of his automobile), and that defendant had the right to submit the defense that plaintiff's conduct exhibited a reckless disregard for his own safety notwithstanding this defense was based upon plaintiff's evidence and that defendant's evidence on the issue was contrary to that of plaintiff's.

■ Plaintiff strikes at Instruction No. 6 on the further ground that plaintiff's conduct which would bar his recovery was characterized in a different fashion than defendant's conduct which would impose liability; that as to the latter (in Instructions Nos. 1, 2 and 3) the phrase "wilful and wanton misconduct" was employed but that as to the former the phrase "reckless disregard for his own safety" was used; that these definitions of the standard of care are in conflict, and should not have been submitted. The basic general concept of the term "wilful and wanton misconduct" appearing in the Illinois guest statute, as stated by the Illinois courts, is an act "done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved." Myers v. Krajefska, (1956), 8 Ill.2d 322, 134 N.E.2d 277, in which the Supreme Court of Illinois refused to declare erroneous that court's previous definition in Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N.E.2d 293. The often quoted definition in Schneiderman,[1] obviously the pattern for Instruction No. 2, and from which the definition of wilful or wanton misconduct is copied into Instruction No. 6, follows: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." By this definition wilful and wanton misconduct is equated with conduct which exhibits reckless disregard for safety with consciousness of the impending danger and

1. Which we have recognized as the rule announced by the Illinois courts in defining wilful and wanton misconduct. Barnes v. Lackey, Mo.Sup., 319 S.W.2d 638, 642; Boehrer v. Thompson, 359 Mo. 465, 471, 222 S.W.2d 97, 99.

indifference for the consequences. That the two concepts were used interchangeably in reference to plaintiff's conduct appears from the fact that Instruction No. 5, plaintiff's main verdict-directing instruction, contained a required finding "that the plaintiff was not himself guilty of any wilful or wanton misconduct as submitted to you by other instructions, * * *." That the jury was properly instructed as to the meaning of the term further appears from Instruction No. 2 which follows:

"The Court instructs the jury that wilful and wanton misconduct as that phrase has been used in other instructions given to you in this case means either intentional conduct or conduct committed under circumstances exhibiting a reckless disregard for the safety of others such as a failure after knowledge of impending danger to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

"You are further instructed that negligence, as that term is used in these instructions, means the failure to exercise that degree of care and caution which a person of ordinary care and prudence would exercise for his own safety and the safety of others under the same or similar circumstances as those shown by the evidence in this case, and that evidence establishing merely the existence of negligence does not prove a charge of wilful or wanton misconduct."

■ Since the two concepts (wilful and wanton misconduct on the one hand and reckless disregard for safety with knowledge of the danger on the other) under Illinois law are treated as synonymous we do not share plaintiff's view that these standards of care are in conflict. An instruction properly hypothesizing facts sufficient to come within these definitions is sufficient as a "true contributorily wilful and wanton instruction" notwithstanding the words "wilful and wanton" are not employed.

■ Finally, it is urged that Instruction No. 6 "failed to include a jury finding that plaintiff's misconduct contributed to cause his injuries" and that "Such failure to submit a finding of proximate cause was error." On appeal from an order granting a new trial for a specific reason the burden is on appellant to show that the court erred in sustaining the motion upon the ground specified, Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739, 741, and appellant assumes no other burden. City of Kennett v. Katz Const. Co., 273 Mo. 279, 202 S.W. 558, 560. Respondent, in defending the action of the court in sustaining the motion, is not confined solely to the ground specified by the court, Berkemeier v. Reller, supra; Graefe v. St. Louis Transit Co., 224 Mo. 232, 123 S.W. 835, 840, but may show that notwithstanding the motion is not sustainable on the ground specified, there are other grounds *alleged in the motion for new trial* under which the motion should have been sustained. Berkemeier v. Reller, supra; Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678, 683. "[R]espondent is entitled to have the *other assignments of error in his motion reviewed*," Cantwell v. Zook, Mo. Sup., 250 S.W.2d 980, 981, and "if *other assignments in the motion for a new trial* will support the order granting the new trial, then such order should be affirmed, * * *." Engleman v. Railway Express Agency, 340 Mo. 360, 100 S.W.2d 540, 544. But such other ground must have been *"preserved in the record,"* or it will not be considered. City of Kennett v. Katz Const. Co., supra, 202 S.W., 1. c. 560. The appellate court will not consider other grounds relied upon to sustain the order, if respondent does not point to "some *assignment of error in his motion for new trial* that would sustain the action of the trial court in granting him a new trial." State ex rel. Spears v. Hughes, (en banc) 346 Mo. 421, 142 S.W. 2d 3, 5. (All italics ours.) This last alleged error upon which respondent depends in defending the action of the trial court was not preserved in this record. No such specific objection was made under Civil Rule 79.03, V.A.M.R. before submission to the jury, and no such allegation of error was set forth in his motion for new trial

under Civil Rule 70.02, V.A.M.R. Accordingly, the point is not preserved for appellate review. Sullivan v. Hanley, Mo.App., 347 S.W.2d 710, 711.

The judgment is reversed and the cause is remanded with directions to reinstate the verdict and judgment for defendant.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.